Ms. Phyllis O. Douglas Attorney for Dade County Public Schools 1450 Northeast Second Avenue Miami, Florida 33132
Dear Ms. Douglas:
You ask substantially the following questions:
1. Does a school safety officer's authority under section316.640(1)(f), Florida Statutes, to enforce all of the traffic laws of this state "on or about any property or facilities which are under the guidance, supervision, regulation, or control of the district school board" include the curtilage and roadways adjacent to and abutting such property?
2. May a district school board enter into a mutual aid agreement with a municipality or county that authorizes school safety officers to enforce the traffic laws on the curtilage and roadways adjacent to and abutting property or facilities that are under the control of the school board?
In sum:
1. In light of the uncertainty surrounding the language of section316.640(1)(f), Florida Statutes, it would be advisable to seek legislative clarification regarding a district school safety officer's authority to enforce traffic laws on nondistrict property.
2. A district school board may enter into a mutual aid agreement with the law enforcement agency having jurisdiction over the curtilage and roadways adjacent to and abutting school district property authorizing school safety officers to enforce the traffic laws on such property.
Question One
District school boards are authorized to commission one or more school safety officers for the protection and safety of school personnel, property, and students within the school district.[1] A school safety officer has the power to make arrests for violations of law on district school board property and to arrest persons, whether on or off such property, who violate any law on such property under the same conditions that deputy sheriffs are authorized to make arrests.[2]
Section 316.640(1)(f), Florida Statutes, provides:
"School safety officers shall have the authority to enforce all of the traffic laws of this state when such violations occur on or about any property or facilities which are under the guidance, supervision, regulation, or control of the district school board."
This language was added to the statute in 1996.[3]
The term "on or about" is defined in Black's Law Dictionary as a "phrase used in reciting a date of an occurrence or conveyance, or the location of it to escape the necessity of being bound by the statement of an exact date, or place; approximately, about; without substantial variance from; near."[4] The term "about" when used as a term of locality has been construed to include reasonably nearby parts, places or things, and has been said to have the meaning of close at hand, nearby or within reach and sometime "of," "on," and "upon."[5]
This office, however, has been advised by the Department of Highway Safety and Motor Vehicles that the trial courts have refused to uphold the validity of citations issued for violations occurring off campus. For example, in Ballard v. State, Departmentof Highway Safety and Motor Vehicles,[6] the court considered substantially the same language authorizing university police officers to enforce all of the state's traffic laws on or about university property.[7] The trial court concluded that the petitioner was stopped for a traffic violation where all the driving occurred off the university campus and did not involve "hot pursuit" originating on the university campus. The court rejected the argument of the Department of Highway Safety and Motor Vehicles that the statute authorizing university police to issue citations on or about university property permitted citations to be issued for violations occurring off campus.[8]
Moreover, the staff analysis of the 1996 legislation creating section 316.640(1)(f), Florida Statutes, in summarizing the effect of this legislation, states that the legislation authorizes school safety officers to enforce traffic laws on school district property.[9]
Accordingly, in light of the uncertainty surrounding the language of section 316.640(1)(f), Florida Statutes, I am of the opinion that it would be advisable to seek legislative clarification on this issue.
Question Two
Part I, Chapter 23, Florida Statutes, the "Florida Mutual Aid Act," creates a state law enforcement mutual aid plan that provides for the coordination of law enforcement planning, operations, and mutual aid across jurisdictional lines.[10] To carry out this plan, the Legislature has found it necessary to "allow a law enforcement agency to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or with any law enforcement agency of the United States or its territories."[11] Section 23.127(1), Florida Statutes, provides that law enforcement officers rendering aid outside their jurisdiction but within the state pursuant to a mutual aid agreement have the same powers as if they were performing such duties within their jurisdiction.
Section 23.1225(1), Florida Statutes, provides that the term "mutual aid agreement" for purposes of the act refers to one of the following types of agreements:
"(a) A voluntary cooperation written agreement between two or more law enforcement agencies or between one or more law enforcement agencies and a school board that employs school safety officers which permits voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency or entity that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency or entity that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency or entity, and any other terms and conditions necessary to give it effect. Examples of lawenforcement activities that may be addressed in a voluntarycooperation written agreement include establishing a joint city-county task force on narcotics smuggling or authorizingschool safety officers to enforce laws in an area within 1,000feet of a school or school board property.
(b) A requested operational assistance written agreement between two or more law enforcement agencies or between one or more law enforcement agencies and a school board that employs school safety officers for the rendering of assistance in a law enforcement emergency. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency or entity that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency or entity that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency or entity, and any other terms and conditions necessary to give it effect. An example of the use of a requested operational assistance written agreement is to meet a request for assistance due to a civil disturbance or other emergency as defined in 252.34.
(c) A combination of the agreements described in paragraphs (a) and (b)." (e.s.)
This office has stated that the use of a mutual aid agreement does not contemplate a complete assumption of law enforcement services by an assisting law enforcement agency, but is more limited in scope.[12] As recognized by the act itself, the use of mutual aid agreements should more appropriately be confined to specific law enforcement activities in which two or more law enforcement agencies jointly provide assistance to each other.
Section 23.1225(3), Florida Statutes, specifically provides that a mutual aid agreement may be entered into by:
"(a) A sheriff;
(b) A mayor or chief executive officer of a municipality or county on behalf of a law enforcement agency, if authorized by the governing body of the city or county; or
(c) A school board that employs school safety officers."
Section 23.1225, Florida Statutes, was amended in 1996 to specifically include school districts.[13] The same act also created section 230.23175, Florida Statutes, which provides in subsection (4):
"A school board is authorized to enter into a mutual aid agreement with one or more law enforcement agencies as provided in chapter 23. A school safety officer's salary may be paid jointly by the district school board and the law enforcement agency, as mutually agreed to."
In light of the above, I am of the opinion that a school board is authorized to enter into a mutual aid agreement with the law enforcement agency having jurisdiction over the curtilage and roadways adjacent to and abutting the property under the control of the school board to authorize the school safety officers to enforce the traffic laws on such property.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 230.23175(2), Fla. Stat.
[2] Section 230.23175(3), Fla. Stat., defining a school safety officer as
"a law enforcement officer, as defined in s. 943.10(1), who is certified under the provisions of chapter 943 and is employed by either a law enforcement agency or by the school board. If the officer is employed by the school board, the school board is the employing agency for purposes of chapter 943, and the school board must comply with the provisions of that chapter."
[3] See, s. 3, Ch. 96-276, Laws of Florida.
[4] Fourth rev. ed. (1968) at 1240.
[5] 1 C.J.S. About p. 330.
[6] Case No. CI 95-5472 (9th Jud. Cir, Orange County, May 10, 1996).
[7] See, s. 316.640(1)(a)1.b., providing:
"University police officers shall have authority to enforce all of the traffic laws of this state when such violations occur on or about any property or facilities that are under the guidance, supervision, regulation, or control of the State University System, except that traffic laws may be enforced off-campus when hot pursuit originates on-campus."
[8] The department has advised that similar challenges to citations issued for violations off campus have also been successful.
[9] See, Final Bill Analysis and Economic Impact Statement on CS/HB 769, Summary, dated May 14, 1996.
[10] Section 23.121(1)(a), Fla. Stat.
[11] Section 23.121(1)(g), Fla. Stat. And see, s. 23.121(1), Fla. Stat., stating the need for the Florida Mutual Aid Act:
"Because of the existing and continuing possibility of the occurrence of natural or manmade disasters or emergencies and other major law enforcement problems, including those that cross jurisdictional lines, and in order to ensure that preparations of this state will be adequate to deal with such activity, protect the public peace and safety, and preserve the lives and property of the people of this state[.]"
[12] Attorney General Opinion 96-78 (1996). And see, Op. Att'y Gen. Fla. 90-84 (1990).
[13] See, s. 1, Ch. 96-276, Laws of Florida.